UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHARON PANOSH, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:12-cv-00066-NT |
| | ) |
| ERIC K. SHINSEKI, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION**

Sharon Panosh, who lists as her current address a residence in Bangor, Maine, is suing Eric K. Shinseki, the Secretary of the Department of Veterans Affairs, in connection with her termination from employment at the Veterans Administration Health Care Center in San Diego, California in the later part of 2003 and subsequent settlement of an EEO claim against the agency in 2005. The defendant has moved to dismiss the complaint, or in the alternative for judgment on the pleadings, for the following three reasons: (1) jurisdiction to rescind the settlement agreement exclusively rests with the Court of Federal Claims; (2) the reassertion of the underlying employment claims is not timely; and (3) the complaint fails to state a claim and sovereign immunity controls, in any event. I now recommend that the Court grant the motion and dismiss this case.

**Panosh's Allegations**

On February 21, 2012, Panosh filed a civil complaint in this Court. The complaint, consisting of written allegations interspersed with various exhibits, is 243 pages long, contains multiple submissions of the same exhibits, frequently consisting of e-mail chains, and absolutely no numbered paragraphs. It is difficult to navigate, but the story which emerges is that in 2003 Panosh was a victim of sexual harassment at a VA facility. The harasser received suspension

and counseling, but Panosh was ultimately terminated from her VA employment. An EEO complaint ensued and in 2005 Panosh settled her claim. I will attempt to highlight the salient provisions of the current "complaint" that has been filed in this court. Panosh begins her pleading with a fifteen topic Table of Contents. (Complaint, ECF No. 1, p. 2, Page ID # 2.) In order to assist the reader, when I reference particular documents that appear to have some significance I will include the page identification from the ECF docket, but otherwise I will not provide specific cites to portions of the complaint as I attempt to recite the salient allegations. The quotations are taken from the typewritten pages that were drafted by Panosh, rather than the included exhibits.

      The first topic is entitled "Federal Jurisdiction." Panosh explains that this Court has jurisdiction because "I have exhausted all my other options." Panosh says that in 2003 she filed an EEO complaint against the VA in San Diego, California. She reached agreement with the VA on July 25, 2005, and signed a settlement agreement. She cannot reopen the original case nor can she file a new EEO case because she is no longer a federal employee. Panosh alleges that in 2005 she was not competent to sign such an agreement. She states in conclusory fashion that her allegations are sexual harassment and assault and discrimination based on "reprisal" and disability. She also alleges sex-based discrimination by the VA and the VA police. Panosh is seeking $15,000,000.00 as damages and she wants the VA to pay "a minimum of $50,000.00 for attorney fees to try this case."

      The second topic in her complaint is entitled "Employment/Termination." Panosh was hired by the VA in San Diego in December 2002, as a temporary employee and became a permanent employee in June 2003. Her termination difficulties with the VA began on August 19, 2003, over a telephone call she made from her home to report that she was sick. Her exhibits

include a letter dated August 20, 2003, which purports to terminate her from her employment with the VA as a telephone operator because of being absent from work without leave and failure to follow her supervisor's instructions.  (Page ID #10-11.)  Panosh also includes e-mail correspondence which reveals that on June 19, 2003, a male co-employee reported to a supervisor that he had a crush on Panosh and that there had been some difficulties between them. The male co-employee was a military veteran who claimed to be suffering from obsessive compulsive disorder.  (Page ID # 16.)

Panosh's third topic is identified as "Tolerance of Sexual Harassment at the VA San Diego."  Under this section Panosh reveals that she brought the subject matter of the male co-employee's alleged sexual harassment to the attention of her supervisor in February 2003.  She complains that the VA did nothing about the situation until June 2003, and, more generally, that the VA in San Diego did not take sexual harassment seriously.  The exhibits reveal that by July 2003, her immediate supervisor was attempting to resolve the sexual harassment issue by removing the harasser from the workplace through legal channels and providing Panosh with a police escort to her car for protection.  (Page ID # 22.)

Topic four is entitled "Sex Based Discrimination."  Exhibits under this section include a letter dated July 22, 2003, addressed to the alleged harasser and removing him from his position as telephone operator at the VA based primarily upon his sexual harassment of Panosh.  (Page ID # 31.)  The proposed removal was subsequently amended to a fourteen-day suspension coupled with anger and stress management classes.  Panosh faults the VA police for only charging the alleged harasser with disorderly conduct when he should have also been charged with assault and false imprisonment, among other offenses.

Panosh's next section is called "Discrimination Based on Reprisal." According to Panosh, beginning in July 2003 she began to receive the "cold shoulder" from her supervisor and others at the VA and she was then terminated shortly after filing an EEO complaint against the VA.

The sixth topic is "Discrimination Based on Disability." Panosh's disability claim appears to have surfaced in July 2003, and was allegedly taking the form of depression and stress associated with the sexual harassment that had occurred beginning in February 2003. (See Page ID # 56.) Ultimately Panosh was terminated for the reasons explained earlier and the harasser was disciplined, as documented in an EEO statement given by the Medical Center Director at the San Diego facility. (See Page ID # 63-66.)

The eighth topic in Panosh's Table of Contents is entitled "Affidavit of Deanna Dahl." This portion of the "complaint" consists of a transcript of a telephonic witness statement taken by an EEO Specialist during the investigation of Panosh's termination. Deanna Dahl, the witness, was Panosh's supervisor in San Diego and she recounted to the investigator what she had done regarding the alleged sexual harassment after Panosh had reported it to her.

The ninth section of the "complaint" consists of the "affidavit of Debra Dyer," which consists of both a written sworn statement and a transcript of a telephonic interview of Dyer, who was the Chief Technology Officer at the VA facility in San Diego and a supervisor over Dahl. Dyer did not because aware of the situation involving Panosh and the alleged harasser until June 2003.

Her next three sections, the tenth, eleventh, and twelfth in the chronology, are entitled "Perjury of Gary Rossio," "Perjury of Deanna Dahl," and "Perjury of Debra Dyer." Panosh explains that these sections, which include excerpts from and resubmissions of prior exhibits,

include those sworn statements from these individuals which "[she] believe[s] to be perjury." The exhibits include e-mail correspondence which is not under oath and difficult to classify as perjury, although it may be Panosh's intent to show through the e-mails that the sworn statements given by the witnesses were false. There is no narrative explaining the inferences Panosh thinks should be drawn from this presentation.

Item thirteen is labeled "Duty of Care." The gist of this section appears to be Panosh's claim that she suffered a work related injury in February 2003, when the harassment began and that her supervisors denied her time off from work to recover from that injury.

Her penultimate topic is simply called "Fourth Amendment." Panosh writes, "I believe that my Fourth Amendment has been violated." The complaint appears to be related to the VA's investigation of her home phone records without her permission, or for a purpose other than the one she had authorized.

The final topic in the 243-page complaint is "#15 Negligent Supervision/Training." According to Panosh, "[a]lthough supervisors were made aware of the problems [the sexual harasser] was creating, the VA failed to address these problems." Panosh's immediate supervisor, while sympathetic to Panosh, did not report the harassment to her own supervisors from February until June, even though she was allegedly aware of the serious nature of the problem. Panosh attributes this conduct to a systemic failure to train personnel regarding issues related to sexual harassment.

After the defendant filed the present motion to dismiss, Panosh filed what she called a "motion to amend complaint." (ECF No. 21.) I denied her request, but the proposed amendment wanted to add four more defendants to the case, the United States Department of Veterans Affairs, VA Healthcare System, Dr. Robert Smith, and Mary Lacy. There were no new specific

allegations, but rather a reiteration of Panosh's prior expressed opinion that she was not mentally competent in 2005 when she signed the settlement agreement with the VA.  She also argued that the settlement agreement was based upon what she believed was a temporary injury, but her injury has since become permanent.  Toward that end, she attached as an exhibit a July 26, 2010, letter from a Maine psychiatrist who opined in a report to QTC Medical Services that Panosh's depressive state appeared to be a permanent aggravation of pre-existing depression.  (See Page ID # 308-310.)

## Defendant's Jurisdictional Allegations

In addition to the complaint allegations, the defendant has submitted an affidavit and various exhibits in support of its motion to dismiss.  Other than the allegations in the motion to amend discussed above, Panosh has not filed an objection to the motion to dismiss or the factual presentation and it does not appear to me that the following facts could be fairly disputed in any event.  Panosh has not been employed by the Department of Veterans Affairs since August 20, 2003.  Her EEOC complaint about the events surrounding her termination was settled pursuant to the terms of a settlement agreement attached as an exhibit.  (ECF No. 20-1.)  Thereafter the EEOC dismissed her complaint on July 25, 2005.  (ECF No. 20-2.)  Panosh had legal representation during the 2005 time frame.  (ECF No. 20-3.)  She did not file any further claims against the VA until March 9, 2011, when she filed an administrative tort claim against the VA.  (ECF No. 20-4.)  The administrative tort claim was denied on July 22, 2011.  (ECF No. 20-5.)  This action was filed almost seven months later.

**Discussion**

*Rescission of the Contract*

To the extent this complaint can be read as a complaint for rescission of the settlement agreement the defendant argues it should be dismissed for two reasons:  (1) it fails to state a claim for such relief; and (2) if it does state a claim, this Court does not have jurisdiction to entertain the claim.  Because I agree with the Government on the second issue, it is not necessary to consider whether or not the complaint actually states a viable claim for rescission of the 2005 settlement agreement.

A federal district court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  In evaluating a motion to dismiss brought pursuant to this rule the Court may consider both the complaint allegations and any jurisdictional facts properly made part of the record.  Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162-63 (1st Cir. 2007).  Where, as here, the jurisdictional facts are established on the face of plaintiff's complaint and with undisputed exhibits directed solely at the issue of jurisdiction, the court bases its jurisdictional decision on those undisputed facts without weighing the evidence.  Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 40 n.6 (1st Cir. 2012).

It is a well settled principle of federal court jurisdiction that actions involving settlement agreements are contract actions and even if a federal district court had jurisdiction over the underlying claim, there must be a separate and distinct basis for federal court jurisdiction over the contract dispute.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 378 (1994).  The defendant provides persuasive authority for the proposition that a federal district court lacks jurisdiction to either enforce or rescind a settlement agreement in a Title VII employment discrimination case.  Schmidt v. Shah, 696 F. Supp. 2d 44, 67 (D.D.C. 2010) (finding no subject

matter jurisdiction over rescission claim brought by severely depressed and allegedly coerced plaintiff against government agency because any contract action in excess of $10,000.00 is exclusively within the jurisdiction of the Court of Federal Claims and settlement agreements are contracts for purposes of jurisdictional analysis).  For purposes of Tucker Act jurisdiction as set forth in 28 U.S.C. § 1491(a)(1) and 28 U.S.C. § 1346(a)(2), the disputed contract involved a settlement amount of $35,000.00, in excess of this Court's jurisdictional limit of $10,000.00 regarding contracts with the federal government.  Thus, while a federal district court has jurisdiction over some tort claims and some contract disputes where the amount in controversy is less than $10,000.00, it does not have jurisdiction over contract claims that involve more than $10,000.00.  The portion of her claim that seeks rescission of the settlement agreement should be dismissed for lack of subject matter jurisdiction.

While cases involving rescission of settlement agreements are not numerous, there are a significant number of cases which have considered the issue of the federal district courts' jurisdiction to enforce such agreements.  Munoz v. Mabus, 630 F.3d 856, 864 (9th Cir. 2010) (Congress has not provided for enforcement of Title VII settlement agreements in federal court); Frahm v. United States, 492 F.3d 258, 262 (4th Cir. 2007) ("statutory waiver does not expressly extend to monetary claims against the government for breach of a settlement agreement that resolves a Title VII dispute"); Lindstrom v. United States, 510 F.3d 1191, 1194 (10th Cir. 2007) (Equal Employment Opportunity Commission's regulation "does not authorize a suit to enforce the settlement agreement but rather only the reinstatement of the original discrimination complaint"); Sawyer v. Nicholson, 2010 U.S. Dist. Lexis 115969, 2010 WL 4510954, *28 (N.D. Ill. Nov. 1, 2010) ("The enforcement of a settlement agreement that resolves a Title VII claim is not itself a civil action claiming discrimination under Title VII, and Title VII contains no express

8

indication of consent relating to claims alleging breach of settlement agreements stemming from suits under Title VII"); Gulley v. Shinseki, 2010 U.S. Dist. Lexis 102567, 2010 WL 3824173, *2 (W.D. Okla. Sept. 28, 2010) (dismissing with prejudice because sovereign immunity waiver did not extend to monetary relief for alleged breach of settlement agreement, agreement did not indicate intent to waive sovereign immunity, and no amendment could cure defect); Rueda-Rojas v. Potter, 2010 U.S. Dist. Lexis 90160, 2010 WL 2942648, *2 (S.D. Fla. July 26, 2010) (no waiver of immunity for monetary claims or claims for specific performance for government's alleged breach of agreement purporting to settle Title VII dispute).  I see no reason why a contract based action for rescission should be viewed differently than an action for enforcement of a settlement agreement and I conclude this Court lacks subject matter jurisdiction.

*Employment Discrimination Claims*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendant has advanced a statute of limitation defense asserting that the passage of time prevents the plaintiff from stating a claim for which relief can be granted.  (Motion to Dismiss, ECF No. 19, p. 13, "to the extent she intends to assert substantive employment discrimination claims, it is too late".)  The facts supporting this defense should be clear on the face of the plaintiff's pleadings.  Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009).  If the movant introduces documents outside the pleadings to validate its defense, the court may only consider the extraneous material by converting the motion to dismiss into a motion for summary judgment, and it may only do that if it gives the parties "a reasonable opportunity to present all the material that is pertinent to the motion."  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Fed. R. Civ. P. 12(d)).  An exception to the conversion rule is recognized, however, which permits a court to consider documents that are not reasonably subject to

challenge based on lack of authenticity, such as some public records and documents that are central to, incorporated into, or sufficiently referred to in the complaint. Greenier v. Pace, Local No. 1188, 201 F. Supp. 2d 172, 177 (D. Me. 2002) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Any documents filed by defendant fall within this category.

Reviewing the complaint, it is not entirely clear whether Panosh intends to assert substantive employment discrimination claims in this court or merely wants to be returned to the status quo ante if the contract is rescinded.[1] Panosh concedes that she is no longer a federal employee, and her Complaint includes a copy of her August 2003 termination letter. Although some of the alleged conduct involves matters that allegedly occurred in 2004, there are no allegations of misconduct that occurred after the EEO Settlement Agreement in July 2005. Panosh withdrew her administrative claim by voluntarily dismissing it after the settlement agreement was signed. Notably, there are no allegations of timely exhaustion of administrative remedies, and it is now too late for Panosh to assert employment claims against the VA, unless the settlement agreement is rescinded and the matter is returned to the administrative forum to obtain the requisite right to sue letter following exhaustion of administrative remedies. Title VII prohibits discrimination in federal employment with respect to employees or applicants for employment, but it is subject to a strict regulatory framework. 42 U.S.C. §§ 2000e-3(a) & 2000e-16(a). For Title VII claims, the timely exhaustion of administrative remedies is a prerequisite. 42 U.S.C. § 2000e-16(c). The requirement is strictly applied because exhaustion is a "condition to the waiver of sovereign immunity." Irwin v. Dep't of Veterans Affairs, 498 U.S.

---

[1] Panosh makes no reference to returning the $35,000.00 payment she received under the settlement agreement, and of course if the contract were rescinded and the parties returned to their prior positions, the money would also be returned. Panosh had not completed the administrative process when she settled her case and thus there is no underlying lawsuit in California, or anywhere else, that would be reinstated by rescission of the settlement agreement.

89, 94 (1990).  Typically, the failure to file in a timely manner "bars relief in the district court." Cano v. U.S. Postal Serv., 755 F.2d 221, 223 (1st Cir. 1985).

Within 45 days of an allegedly discriminatory matter, an aggrieved person must initiate contact with a Counselor.  29 C.F.R. § 1614.105(a)(1).  A plaintiff must also file a charge of discrimination within 180 days of the alleged unlawful practice.  42 U.S.C. § 2000e-5(e)(1). Other deadlines also apply, such as the 15-day deadline to file a formal complaint after receiving notice from the agency, 29 C.F.R. § 1614.106(b), as well as the 90-day and 180-day deadlines for filing a complaint in federal court, depending on the administrative circumstances.  29 C.F.R. § 1614.407; 42 U.S.C. § 2000e-16(c).  Panosh's complaint reveals that she has not complied with these procedural prerequisites and the direct employment discrimination claims are subject to dismissal for this reason.

*Remaining Tort/Constitutional Claims*

Panosh's Fourth Amendment claim simply dies on the vine.  For one thing, the alleged violation involving the phone records occurred in July 2003, more than eight years prior to filing suit.  While it may be a matter of some debate as to the applicable statute of limitation, there is no question in my mind but that the six-year Maine statute of limitation applicable to civil rights actions would be the outer limit for any constitutional Bivens-type violation alleged against VA police officers personally involved with examining Panosh's phone records.  As the defendant indicates, neither he nor any of the proposed additional defendants are alleged to have had any personal involvement in examining Panosh's phone records.  The United States of America has never waived sovereign immunity for official capacity claims of constitutional violations.  A claim such as this one, arising under the Fourth Amendment, may only be brought against federal employees or officials in their individual capacities.  Ruiz Rivera v. Riley, 209 F.3d 24,

28 (1st Cir. 2000). Thus Panosh's Fourth Amendment constitutional claim fails both because it is time barred and because the sole named defendant has no personal liability in any event.

For tort claims against the federal government, such as Panosh's allegations of assault, negligent supervision, or other tort based claims, the exclusive remedy is the Federal Tort Claims Act, 28 U.S.C. § 2679. Pursuant to that statute, exhaustion of administrative remedies is an absolute jurisdictional prerequisite. 28 U.S.C. § 2675(a). Moreover, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). In this case, based on the Complaint, the underlying allegations took place before the July 2005 settlement agreement, but Panosh failed to assert an administrative claim until March 2011, which is too late. Accordingly, any tort claim is "forever barred."

It may be that Panosh believes her complaint is timely based upon the July, 2010, evaluation which opines that her depressive diagnosis is now permanent. It appears to me that her motion to amend intends to make that point. What Panosh apparently fails to comprehend is that her current condition, even if causally related to the long ago events in California, is not based upon any actions involving the VA that occurred after 2005. (See Motion to Amend, ECF No. 21, "[t]he injuries that I have incurred while employed at the VA are now considered permanent, giving rise to a new claim".)

## Conclusion

Based upon the foregoing, I recommend that the complaint be dismissed for the reasons discussed herein.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

August 13, 2012                             /s/ Margaret J. Kravchuk
                                            U.S. Magistrate Judge